## Gaar, Scott & Company v. Vanhook.

(Decided January 26, 1915.)

### Appeal from Scott Circuit Court.

1. Judgment—Vacation of—Petition for a New Trial.—Under Sections 518, 520 and 521 of the Civil Code, the court rendering a judgment may vacate it on the petition of the defendant after the term, if it was obtained by the fraud of the successful party and the petition and evidence in support of it show that the defendant had a defense that would have defeated the rendition of the judgment. Under these code provisions the petition must set up a defense, and it must also be supported by evidence.

2. Judgment—Vacation of—Petition for a New Trial.—Where the holder of notes given for machinery represented to the payor of the notes that if he would surrender the machinery without a suit it would be accepted in satisfaction of the debt, the agreement to and the delivery of the machinery was a sufficient consideration to support the agreement of the holder of the notes, and if the payor by the fraud of the holder was induced to sign a paper believing that it embodied the agreement as he understood it when in fact it was an answer entering his appearance to a suit that had been brought, the judgment on his petition and evidence was properly vacated, it appearing that he did not know of the institution of the suit or that judgment had been rendered against him until long afterwards.

3. Judgment—Vacation of—New Trial—Practice.—In a suit seeking to vacate a judgment and obtain a new trial, where the petition and evidence show that the party is entitled to a new trial, the court may, on the pleading and evidence, vacate the judgment and permit the complaining party to file his answer in the original action, and a ruling like this will not bind the court when it comes to hear and determine the case on the pleadings and evidence in the original action, or it may determine the issues in the original action without any reference to the petition for a new trial or the judgment rendered therein. The court may in a suit for a new trial set aside the judgment in the original action and also determine finally the rights of the parties, or he may set aside the judgment and leave the rights of the parties to be finally determined in the hearing of the original action.

C. C. BAGBY, CHENAULT, HUGUELY and W. S. KELLY for appellant.

B. M. LEE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee, Vanhook, in June, 1908, purchased from the appellant, Gaar, Scott & Company, a threshing out-

fit for $1,810, for which amount he executed several notes, and to secure the payment of these notes he executed a mortgage on the purchased property. On October 13, 1910, the company brought suit against Vanhook to obtain judgment for the balance due on its notes, which at that time amounted to some $1,400, and it asked for a receiver and that the mortgaged property be sold to pay the debt.

A few days after this suit was filed Vanhook, by a paper signed by him, entered his appearance to the action and consented to the submission of the case at the court which was then in session, and on the day following the filing of this paper judgment went against Vanhook for the amount due on the notes, and an order was made directing the commissioner of the court to sell the mortgaged property.

In November, 1910, the property ordered to be sold, after having been first appraised at $700, was offered for sale as directed in the judgment, and the company became the purchaser at the price of $475. Subsequently this sale was confirmed.

In September, 1912, Vanhook filed in the Scott Circuit Court a suit in which he averred, in substance, that an agent of the company approached him on or about October 19, 1910, and told him that unless he paid or secured the unpaid notes due for the threshing outfit a suit would be filed to enforce the mortgage lien, but that if he would give up the machinery without a suit the company would accept it in full settlement of the balance due it, and thereupon he agreed to surrender the machinery in full settlement of the balance due by him to the company.

He further averred that the agent requested him to sign a paper showing that he had given up the machinery, and thereupon produced a writing which he represented to him was merely an agreement on his part to surrender any claim he had against the machinery and permit the company to take it in full settlement of its debt.

He further averred that by the fraud and over-reaching of the agent of the company he was induced to sign the paper believing that it was, as before stated, merely an agreement on his part to surrender the machinery in settlement of the debt, when, in fact, it was an answer to the petition entering his appearance to the action. That the judgment was entered against him in the suit

after the matters between himself and the company had been settled, as before stated, and that he did not know until long after the judgment had been entered, nor until an effort was made by the company to collect the balance due on the judgment after crediting the amount of the proceeds of the sale, that a judgment had been entered against him. He asked that the judgment be set aside and that he be granted a new trial in the action and given an opportunity to defend same, and for all proper relief.

In its answer, filed after a demurrer to the petition as amended had been overruled, the company, after denying all other averments of the petition, admitted that Layton, its agent, did procure the signature of Vanhook to the paper which was filed, and further averred that when the property was sold in November, 1910, Vanhook, who was paid by the commissioner of the court for so doing, brought the property to the place appointed by the commissioner for the purpose of selling it and was present at the sale, but did not make any objection thereto.

The evidence of Vanhook is that Layton told him when he brought the paper to him to sign that it was to show that he had given up the machinery, and that if he would sign it it would save the costs of a suit and would settle the debt.

. He further said that at the time he signed the paper he did not know that suit had been brought against him or that the paper he signed was an answer in the suit, nor did he know it until several months afterwards when he discovered, through the fact that an execution had been levied on an interest he had in some land, that suit had been brought and judgment rendered. He further said that Layton read the paper to him, but he did not understand its meaning, and that he signed it because Layton advised him to do so and he believed it was a final settlement of the debt. He further testified that, although he sent the machinery to Georgetown so that it might be sold by the commissioner, he was not present at the sale, although he knew on the day the sale was made that the property had been sold and bought in by the company.

Layton testified, in substance, that he took the paper signed by Vanhook to have him sign it at the request of the attorney who brought this suit, in order that a judgment might be entered in the case at the term of court then in session without postponing the judgment until the

next term of the court, which would have been necessary except for the fact that the paper had been signed, as a summons could not be executed on Vanhook in time to get judgment at that term of the court. He said he had a very slight acquaintance with Vanhook, and denied that he made any representations whatever to him except to tell him that suit had been filed and that if he signed the paper a judgment would be rendered at the term of the court then in session and time and expense would be saved in that way; that the object in having the judgment of sale at that term of court was to allow the machinery to be sold and save the cost of putting it in the hands of a receiver.

F. M. Thomason, the commissioner of the court, said that before selling the property he wrote to Vanhook asking him to bring it to Georgetown on or before the day set for the sale, and that Vanhook told him over the telephone that a Mr. Steger would bring it in provided he, Thomason, would pay the charges, which he agreed to do, and did.

Upon the pleadings and evidence the court adjudged that Vanhook was entitled to a new trial of the original case of the company against him, and ordered that the judgment in favor of the company be set aside and that Vanhook be given until the first day of the next term to file an answer to the original suit of the company.

Section 518 of the Civil Code provides that "The court in which a judgment has been rendered shall have power, after the expiration of the term, to vacate or modify it * * * for fraud practiced by the successful party in obtaining the judgment."

Section 520 provides that "The proceedings to vacate or modify the judgment * * * shall be by petition verified by affidavit, setting forth the judgment, the grounds to vacate or modify it, and the defense to the action if the party applying was defendant."

Section 521 provides that "A judgment shall not be vacated on motion or petition until it be adjudged that there is a valid defense to the action in which the judgment is rendered."

And Section 522 provides that "The court may decide upon the grounds to vacate or modify a judgment before deciding upon the validity of the defense or cause of action."

Under these code provisions the defendant seeking to set aside a judgment on the ground of fraud must state in his petition sufficient grounds to authorize the vacation or modification of the judgment and the defense that he could and would have interposed to defeat the rendition of the judgment if he had not been prevented by the fraud alleged, and the averments of the petition must be supported by evidence. Wireman v. Wireman, 27 Ky. L. R., 961; Prater v. Campbell, 110 Ky., 23.

Therefore the question presented is, did the petition and evidence state grounds sufficient to authorize the vacation of the judgment? If it did, we think Vanhook was entitled to the relief sought.

It will be observed that Vanhook did not claim to have any defense against the notes or mortgage growing out of their execution. His defense was that a fraud was practiced upon him in obtaining his signature to the paper that entered his appearance to the action and consented that judgment might go against him at that term. If, as he alleged and testified, he believed that the paper he signed was merely an agreement on his part that if he would surrender possession of the machinery it would be accepted in satisfaction of the debt, the company had no right to take a judgment against him, or if it did take one, it should have endorsed it "satisfied" when he surrendered the machinery.

The fact that Vanhook agreed to surrender the machinery without a suit was a sufficient consideration to support the agreement of the company to take it in satisfaction of its debt. It was not essential to entitle Vanhook to the relief sought that he should have any defense against the notes or the mortgage growing out of their execution. It was sufficient if he had a defense that would have prevented the entry of the judgment against him or have justified the court in ordering it marked "satisfied." A defendant, within the meaning of the code, has a valid defense to an action if he has a defense that will prevent judgment going against him, no matter what the basis of this defense is.

It would be giving the code a very narrow and technical construction to say that a defendant must be able to make some defense affecting the execution of the note or demand sued on before he will be allowed to vacate a judgment obtained on the note or demand. If, for any sufficient cause, the judgment should not have gone

against him, he should, under the code, be allowed to vacate it. These code provisions were intended for the purpose of affording relief against judgments obtained by fraud, no matter in what the fraud consists, so that it is sufficient to authorize the vacation of the judgment and to constitute a sufficient reason why it should not have been entered.

We do not undertake to express any opinion as to how the case should be decided when it comes up regularly for hearing on the pleadings and evidence hereafter to be filed and taken in the original action, nor do we mean to say whether the evidence in the record is or is not sufficient to justify the court in ordering the judgment vacated when the case is finally heard. All that we do decide is that the court, on the pleadings and evidence, was justified in vacating the judgment and granting Vanhook a new trial. The judgment merely gives him opportunity to make his defense in the original action of the machine company against him, and when the case comes up for hearing in the trial court on the issues made by this defense and the evidence taken thereon, the court will not be in any manner bound or controlled by its judgment in granting Vanhook a new trial, but will hear and determine the issues in the original action without any reference to the action for a new trial or the judgment rendered therein.

In Martin v. Conley, 30 Ky. L. R., 728, it was held that in cases like this the court might, in a suit brought to obtain a new trial, set aside the judgment and also determine finally the rights of the parties, or it might set aside the judgment and leave the rights of the parties to be finally determined in the hearing of the original action, and this latter course the court pursued in this case, being authorized so to do by Section 522 of the Civil Code, *supra*.

The judgment is affirmed.